IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

KULP MINERALS LLC,

    Plaintiff,

        vs.                                                               No. 2:23-CV-00408-KG-KRS

APACHE CORPORATION,

    Defendant.

**ORDER GRANTING APACHE'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**THIS MATTER** is before the Court on Defendant Apache Corporation's Motion for Partial Summary Judgment, filed on April 26, 2024. (**Doc. 40**). Plaintiff Kulp Minerals filed its Response on May 24, 2024, (**Doc. 46**), and Apache its Reply on June 7, 2024, (**Doc. 55**). Having considered the parties' briefing and relevant case law, the Court **GRANTS** Apache's Motion for Partial Summary Judgment, (**Doc. 40**).

**BACKGROUND**

Kulp holds an overriding royalty interest in two leases on which several oil and gas wells are located in Lea County, New Mexico (**Doc. 1-2**) **at 1, ¶ 2**. The wells are Blankenship Nos. 2–7, and Bunin Nos. 1–3, 5–7, and 9. *Id.* Apache operates these wells and makes overriding royalty payments to Kulp for mineral production from them. *Id.* **at 2, ¶ 3**.

This case involves Apache's failure to pay (1) royalty payments on time and (2) interest on these late royalty payments. *Id.* **at 2–3, ¶ 7**.

**I.**     **The Lawsuit:**

On April 4, 2023, Kulp filed the instant action against Apache in New Mexico's Fifth Judicial District Court, asserting claims for breach of the statutory duty to pay oil and gas ("O&G") proceeds and interest; breach of the duty to investigate and pay; fraud; accounting and

1

disgorgement; and injunctive relief. *Id.* at 10–16. After Kulp filed instant action, Apache removed the case to federal court pursuant to 28 U.S.C. § 1332. (**Doc. 1**).

**I.     The Complaint:**

Relevant to this motion, Kulp asserts the following facts in its Complaint. Apache separates royalties based on the type of hydrocarbon produced; Apache then staggers payment of those royalties over multiple checks. (**Doc. 1-2**) **at 8, ¶ 30**. The first check comes within the month following the production/sale month. *Id.* The second check comes a month after the first check and constitutes a late payment under the O&G Proceeds Payment Act, NMSA 1978, Section 70-10-1 to –6, as it arrives outside the 45-day window mandated by the Act. *Id.*

In a well producing both oil and gas, the royalty derived from the oil is paid on time, but royalty derived from gas (including natural gas liquids "NGLs") is paid late. *Id.*

For example, on January 25, 2020, Apache paid Kulp royalty for December 2019 oil production from the Blankenship wells. *Id.* While this payment was not late, Apache then paid Kulp on February 25, 2020, for gas and NGL production from December 2019 from the same wells. *Id.* This second payment was at least ten days late, and there was no sign Apache included statutory interest in this payment. *Id.*

On July 25, 2021, Apache paid Kulp for February 2021 gas production from the Blankenship wells. *Id.* **at 7, ¶ 29**. Royalty from February 2021 production was due no later than April 15, 2021. *Id.* Thus, this payment was over three months late. *Id.* **at 7–8, ¶ 29**. There was no sign Apache included statutory interest in this payment. *Id.*

Kulp asserts the instant action as the representative of a class pursuant to NMRA, 1-023. *Id.* **at 5, ¶ 18**. Kulp's proposed class is comprised of the following:

> [a]ll non-excluded persons or entities who received or, during the pendency of this action will receive, Late Payments from Defendant(s) for O&G proceeds from New

    Mexico Wells and whose payments did not also include the statutory interest
    prescribed by the Oil and Gas Proceeds Payment Act.

*Id.*

    **II.**   **<u>Kulp's Motion for Summary Judgment[1]</u>:**

  Now, Apache seeks partial summary judgment on Kulp's claims under the O&G Proceeds Payment Act, specifically §§ 70-10-3.1, -4.[2] Apache argues summary judgment is proper because Kulp lacks standing to assert claims under these specific provisions of the Act. (**Doc. 40**). The following facts are the undisputed material facts taken from the parties' briefs.

  Apache places funds into suspense accounts when it is unable to pay royalties to an interest owner for some reason, including when an owner cannot be located or when there is a question about marketability of title. (**Doc. 40-1**) **at 1**. Apache and other operators also place owners in suspense status for other reasons; for example, the company may not have its pay deck set up. (**Doc. 46-1**). However, Apache never paid any royalty or other funds owned by or owed

---

[1] The Court takes the facts in this section from the parties' briefs and those background facts are supported by evidence in the record as stated by the parties. These facts are either undisputed, or, where genuinely disputed, are viewed in the light most favorable to Kulp, the non-moving party. *See In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 44 F.4th 959, 964 (10th Cir. 2022). The facts included here are material and are not disputed unless otherwise noted.

[2] In its Motion, Apache also argues Kulp cannot bring claims related to Apache sending O&G proceeds to state unclaimed property funds. However, Kulp clarified that it is not asserting a claim regarding whether it was appropriate for Apache to remit those funds as unclaimed property, (**Doc. 46-2**) **at 7, ¶ 6**. Thus, the Court addresses standing only under §§ 70-10-3.1, -4.

to Kulp into a suspense account for any reason.³ **(Doc. 40-1) at 2, ¶ 6**. From the time Kulp was set up in Apache's accounting system, Kulp was in active "pay status." *Id.* **at 1, ¶ 5**. Active "pay status" means funds are paid directly to the owner and not placed in a suspense account, as would be the case if Apache questioned the marketability of Kulp's title or ownership of Kulp's royalty interests, or if Apache could not locate Kulp. *Id.* **at 1–2**. Further, if an owner is in "pay status," Apache has all the information (name, address, division of interest) it needs under § 70-10-3.1 to trigger the 18% penalty rate. **(Doc. 46-1) at 4, ¶ 3**.

Moreover, when Apache cannot locate an interest owner for an extended period, Apache sends royalties and other O&G proceeds to state funds for unclaimed or abandoned property. **(Doc. 40-2) at 1, ¶ 3**. Apache always paid all funds owed to Kulp directly to Kulp, and never paid any royalty payments or other funds owed to Kulp to a state fund for unclaimed or abandoned property. *Id.* **¶ 4**.

---

³ Kulp attempts to dispute this fact by submitting an affidavit from Barbara E. Ley, a certified information technology professional with a financial forensics' certification, who affirms that owners receiving late payments are typically in "suspense status" and Kulp received late payments from Apache. **(Doc. 46-1) at 4, ¶ 2; 5–6, ¶ 8**. However, these facts do not create a genuine dispute over whether Kulp was in "pay status." Pointing to Apache's late payments to Kulp and asserting that owners are typically in suspense under such circumstances, without evidence that Kulp specifically was not in "pay status," does not genuinely dispute Apache's assertion. Both can be true: owners who receive late payments can typically be in "suspense status," and Kulp could be in "pay status" despite receiving late payments. Indeed, Ms. Ley's affidavit does not foreclose the possibility that owners receiving late payments can be in in "pay status." *See Harjo v. City of Albuquerque*, 326 F. Supp. 3d 1145, 1158 n.11 (D.N.M. 2018) (finding no genuine dispute of material fact where two facts can be true)

**RELEVANT LAW**

**I.     Rule 12(b)(1) & Rule 56:**

Article III standing is a "threshold question of subject matter jurisdiction." *Kerr* v. *Polis*, 20 F.4th 686, 692 (10th Cir. 2021). "Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss a claim for lack of subject-matter jurisdiction, mounting either a facial or factual attack." *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 872 (10th Cir. 2020). "A facial attack assumes the allegations in the complaint are true and argues they fail to establish jurisdiction." *Id.* (citation omitted). In contrast, "[a] factual attack goes beyond the allegations in the complaint and adduces evidence to contest jurisdiction." *Id.* (citation omitted).

While a Rule 12(b)(1) motion is typically the proper vehicle to challenge standing, if the standing issue is intertwined with the merits of the case and the Court considers evidence beyond the complaint's allegations, the Court must convert the motion to a Fed. R. Civ. P. 56 motion for summary judgment. *See Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995), *abrogated on other grounds by Cent. Green Co. v. United States*, 531 U.S. 425 (2001) ("[A] court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case.").

To ascertain whether a standing question is intertwined with the merits of the case, courts consider whether resolving the standing question "requires resolution of an aspect of the substantive claim." *United States v. United Behav. Health, Inc.*, 2024 WL 3458120, *5 (D.N.M.) (quoting *Pringle v. United States*, 208 F.3d 1220, 1223 (10th Cir. 2000)).

Here, the standing questions is intertwined with the merits of the case because Apache's argument—that Kulp did not suffer an injury in fact—hinges on whether Apache suspended

5

Kulp's funds or was unable to locate Kulp, both of which are elements of claims under §§ 70-10-3.1, -4. *See id.* (finding standing issue inextricably intertwined with merits where defendants' argument against standing/ injury in fact relied on detailed assertions that claims failed on the merits). As a result, Apache properly brings its Motion under Rule 56.

Turning now to the summary judgment standard, summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A disputed fact is 'material' if it might affect the outcome of the suit under the governing law, and the dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Beauford v. Mesa Cnty., Colorado*, 35 F.4th 1248, 1261 (10th Cir. 2022) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact, but once the moving party has done so, the burden shifts to the non-movant to establish a genuine issue of fact." *Georgelas v. Desert Hill Ventures, Inc.*, 45 F.4th 1193, 1197 (10th Cir. 2022) (citation omitted). In opposing summary judgment, the non-movant cannot rest on mere allegations but "must bring forward specific facts showing a genuine issue for trial." *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (citation omitted). "The summary judgment standard requires [the Court] to construe the facts in the light most favorable to the nonmovant and to draw all reasonable inferences in its favor." *Beauford*, 35 F.4th at 1261 (citing *Lance v. Morris*, 985 F.3d 787, 793 (10th Cir. 2021)).

"'The party invoking federal jurisdiction bears the burden of establishing' standing—and, at the summary judgment stage, such a party 'can no longer rest on . . . mere allegations, but

must set forth by affidavit or other evidence specific facts.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 411–12 (2013) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992)).

II.     **Article III Standing:**

Article III standing requires three elements: (1) an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of—the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan*, 504 U.S. at 560–61.  Here, Apache challenges the first element—whether Kulp suffered an injury in fact.

"For an injury to be particularized, it 'must affect the plaintiff in a personal and individual way.'" *Laufer v. Looper*, 22 F.4th 871, 876 (10th Cir. 2022) (quoting *Lujan* 504 U.S. at 560 n.1).  "To be 'concrete,' an injury must be 'real' rather than 'abstract.'" *Id.* (quoting *Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1190 (10th Cir. 2021).  Further, a named plaintiff cannot rely on potential class members' injuries to establish standing. *See Warth v. Seldin*, 422 U.S. 490, 502 (1975) ("Petitioners must allege . . . they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.").

## DISCUSSION

Initially, the Court addresses Kulp's arguments that (1) Apache's Motion is an improper and premature attack on Kulp's typicality and adequacy, (**Doc. 46**) **at 14**, and  (2) Apache's

failure to pay interest on late payments for funds not held in suspense accounts constitutes an injury in fact under all provisions of the O&G Proceeds Payment Act. *Id.* **at 11**.

First, the Court is unpersuaded by Kulp's argument that Apache's challenge to standing constitutes an improper and premature challenge to the class's typicality and adequacy. Kulp cites *Abraham v. WPX Production Productions, LLC*, 184 F. Supp. 3d 1150 (D.N.M. 2016) in support of this claim. *Id.* **at 14–17**.

In *Abraham*, the plaintiffs, holding overriding royalty interests in New Mexico, brought a class action on behalf of all present and former owners of royalty and overriding royalty burdening San Juan Basin oil and gas leases and wells owned by the defendant that had been productive of conventional natural gas in the San Juan Basin. 184 F. Supp. 3d at 1161. The defendant subsequently moved to dismiss the plaintiffs' claims, arguing the plaintiffs lacked standing to assert claims for, among other things, breach of the implied duty to market and the covenant of good faith and fair dealing on behalf of royalty interest owners in New Mexico, overriding royalty interest owners in Colorado, or former royalty or overriding royalty interest owners. *Id.* at 1163. Specifically, the defendant argued the plaintiffs' overriding royalty interests did not provide standing to pursue claims for injuries to royalty owners, as royalty and overriding royalty interests are distinct property interests with different legal rights under separate state laws. *Id.*

The district court rejected the defendant's arguments, reasoning overriding royalty owners, like royalty owners, could assert claims for breach of the implied duty to market and the covenant of good faith and fair dealing. *Id.* at 1192. It further explained, "the question, at the standing stage, is not whether the named [p]laintiffs own the exact same interest as those class

8

members they seek to represent, but whether they own an interest on which they can demonstrate Article III's standing elements." *Id.* at 1197.

*Abraham* involved challenges to standing because plaintiffs' interests were not sufficiently similar to those of potential class members, while Apache's standing challenge directly addresses whether Kulp suffered an injury in fact under specific provisions of the O&G Proceeds Payment Act. This distinction renders *Abraham* inapplicable to the present case.

Moreover, Kulp's suggestion that its alignment of interests with other class members establishes standing misapplies *Abraham*. While such alignment may support typicality and adequacy, it does not fulfill the Article III requirement of injury in fact. As *Abraham* clarified, the question, at the standing stage, is whether the named plaintiffs own an interest on which they can demonstrate Article III's standing elements. Because Apache's challenge directly addresses this question, its standing argument is appropriate and not an improper and premature attack on typicality and adequacy.

Next, Apache's failure to pay interest on late payments to Kulp, which establishes injury in fact under § 70-10-5, does not demonstrate injury in fact under all provisions of the O&G Proceeds Payment Act.

The case law is clear, Article III standing attaches to statutory provisions separately. *See Chamber of Commerce of U.S. v. Edmondson*, 594 F.3d 742 (10th Cir. 2010) (separately analyzing plaintiff's standing to challenge as to each provision at issue); *Energy & Env't Legal Inst. v. Epel*, 2014 WL 1715209, at *4 (D. Colo.) (explaining how a party with standing to challenge one statutory provision may not "leverage that injury into standing to challenge an entire statutory scheme, or indeed even a separate statutory provision"). Therefore, Kulp must

9

demonstrate injury in fact for each provision of the O&G Proceeds Payment Act. Below, the Court addresses standing separately for each challenged provision of the Act.

**I.      § 70-10-3.1:**

In its Complaint, Kulp alleges Apache had "a duty to diligently investigate the identity and location of [o]wners," and it "breached this duty when it failed to diligently investigate the rights of [Kulp] and the [c]lass to receive interest" on payments. (**Doc. 1-2**) **at 11**.

§ 70-10-3.1, titled "Duty to Locate," requires as follows:

> A.  The operator or lessee arranging for the sale of oil and gas shall furnish the payor with the name, the address and the percentage of interest of each person to whom payment is to be made, as well as proof of marketable title to all of the oil and gas to be sold.
>
> B.  The payor shall make a diligent effort to furnish each interest owner with a reasonable division or transfer order that will set forth the proper interest to which the interest owner is entitled, as well as the mailing address to which payment may be directed.
>
> C.  If the purchaser or payor is unable to locate any person listed by the operator or lessee then the purchaser or payor shall notify the operator or lessee that he has been unable to locate or obtain the address of the person entitled to payment.

In its Motion, Apache argues it never had to locate Kulp, nor delayed payment of royalties due to marketability of title concerns. (**Doc. 40**) **at 6**. As a result, Apache contends Kulp did not suffer an injury in fact under § 70-10-3.1. *Id.* Further, Apache argues the "only injury Kulp claims it personally suffered is entirely unconnected to the ways it claims Apache . . . investigates the identity and location of owners." *Id.*

The Court agrees with Apache. The undisputed facts demonstrate Apache always possessed Kulp's name, address, and division of interest, and Kulp was never unknown to Apache. Because Kulp was never unknown to Apache, there is no factual basis to conclude Apache failed to locate it. Without any such a failure, Kulp cannot establish any resulting injury.

As a result, Kulp did not suffer an injury in fact under § 70-10-3.1 and therefore lacks standing to assert claims against Apache under this provision on behalf of itself and potential class members.

## II.     § 70-10-4:

In its Complaint, Kulp alleges "when [Apache] ultimately made [l]ate [p]ayments to [Kulp] and the Class or held O&G proceeds in suspense accounts . . . [Apache] did not pay the interest owing on the Late Payments," in violation of the Oil and Gas Proceeds Payment Act. (**Doc. 1-2**) **at 11**.

> § 70-10-4 requires as follows:
>
> A. Any delay in determining any person legally entitled to an interest in the proceeds from production shall not affect payments to all other persons entitled to payments. In instances where payments cannot be made within the time period provided in Section 70-10-3 NMSA 1978, the payor shall create a suspense account on his books for such interest or may interplead the suspended funds into court.
>
> B. The person entitled to payment from the suspended funds shall be entitled to interest on the suspended funds from the date payment is due under Section 70-10-3 NMSA 1978. The interest awarded shall be the discount rate charged by the federal reserve bank of Dallas to member banks plus one and one-half percent on the date payment is due. Payment of principal and interest on the suspended funds shall be made to all persons legally entitled to the funds within thirty days from the date that the persons are determined to be entitled to the suspended funds by a final legal determination.

In *First Baptist Church of Roswell v. Yates Petroleum Corp.*, the New Mexico Supreme Court clarified how § 70-10-4 "mandates that when proceeds payments are delayed pending the resolution of who is entitled to payment, then upon resolution that person shall be entitled to interest on the *suspended funds*." 2015-NMSC-004, ¶ 14 (emphasis added).

In its Motion, Apache contends Kulp cannot establish "injury in fact" under § 70-10-4 because it never placed any royalties attributable to Kulp into a suspense account. (**Doc. 40**) **at 6–7**.

11

Again, the Court agrees with Apache. The undisputed material facts establish Apache never suspended Kulp's royalties/O&G proceeds; rather, Kulp was always in active "pay status." Active pay status means the funds are paid directly to the owner and not placed in a suspense account. Because Apache never suspended any of Kulp's royalties/O&G proceeds, it had no obligation to pay interest under § 70-10-4. Thus, Apache did not fail to pay Kulp interest under § 70-10-4. Without such a failure, Kulp cannot establish any resulting injury. As a result, Kulp did not suffer an injury in fact under § 70-10-4 and therefore lacks standing under Article III to assert claims against Apache under this provision on behalf of itself and potential class members.

### III.     Rule 56(d):

In its Response, Kulp asks the Court to defer summary judgment until discovery is complete per Fed. R. Civ. P. 56(d). (**Doc. 46**) **at 17**. Under Rule 56(d), a court may defer considering a motion for summary judgment, deny the motion, allow time to obtain affidavits or declarations, or issue any other appropriate order, if a nonmovant shows by affidavit or declaration that it cannot present facts essential to justify its opposition. In support of its request to defer summary judgment under Rule 56(d), Kulp submitted the affidavit of Nathan Hall, counsel of record for Kulp. (**Doc. 46-2**).

In his affidavit, Mr. Hall explains how Kulp lacks access to key facts at this stage, including whether, when paying interest on late payments, Apache: (1) distinguishes between late payments placed in suspense and those that were not; (2) distinguishes between late payments suspended due to an unlocatable owner and late payments to owners with up-to-date contact information; (3) distinguishes between late payments sent directly to owners and late payments sent to the state as unclaimed property. *Id.* **at 3–4**. Mr. Hall also contends Kulp lacks

information on whether Apache maintains databases that track an owners' suspense status, reasons for suspension, and if/when funds were sent to the state as unclaimed property. *Id.* **at 4**.

Mr. Hall explains how allowing discovery into these matters will likely demonstrate that "once funds are released from suspense —*i.e.*, once the royalty is paid to the owner—late payments of those funds are no different from late payments in any other circumstance." *Id.* **at 7**. While the Court does not doubt the facts Kulp seeks would support its position, these facts do not show how Kulp suffered an injury in fact under §§ 70-10-3.1, -4 — or at least create a genuine dispute of material fact on this issue. Indeed, none of these facts call into question any material facts. For these reasons, deferring summary judgment under Rule 56(d) is not warranted. *See Gutierrez v. Cobos*, 841 F.3d 895, 909 (10th Cir. 2016) (upholding a district court's denial of a Rule 56(d) motion because plaintiff did not show how further discovery would assist in overcoming summary judgment).

## CONCLUSION

Because Kulp did not suffer an injury in fact under either § 70-10-3.1 or § 70-10-4, Kulp lacks standing to assert claims under these provisions on behalf of itself and potential class members. Consequently, the Court **GRANTS** Apache's Motion for Partial Summary Judgment (**Doc. 40**).

**IT IS SO ORDERED.**

/s/ KENNETH J. GONZALES[4]
CHIEF UNITED STATES DISTRICT JUDGE

---

[4] Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document. Electronically filed documents can be found on the court's PACER public access system.